# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ALBERTO SANCHEZ,<br>*Plaintiff*<br><br>v.<br><br>JAGUAR LAND ROVER NORTH<br>AMERICA, LLC,<br>*Defendant* | Case No. 1:22-CV-00355-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
    UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), filed May 31, 2022 (Dkt. 9); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint, filed June 14, 2022 (Dkt. 10); and Defendant's Reply, filed June 21, 2022 (Dkt. 12). The District Court referred the motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 13.

### I. Background

Plaintiff Alberto Sanchez brings this suit for breach of warranty against Defendant Jaguar Land Rover North America, LLC, the North American subsidiary of British automobile manufacturer Jaguar Land Rover Limited.[1] On May 1, 2021, Plaintiff entered into a lease agreement[2] with Land Rover Austin, a Jaguar dealership in Austin, Texas, to lease a new 2020 Land Rover Discovery

---

[1] Plaintiff is a Texas resident; Defendant is a New Jersey resident. Am. Complaint, Dkt. 8 ¶¶ 10-11.

[2] Dkt. 1-1.

Sport (the "Vehicle"). Am. Complaint, Dkt. 8 ¶ 12. The Lease Agreement listed the sale price of the Vehicle as $47,916.75. *Id.* ¶ 14; Dkt. 1-1 at 2. The Lease Agreement required Plaintiff to make an initial payment of $5,764.59 to Land Rover Austin and monthly payments of $764.59 for the duration of the 39-month lease term. Dkt. 1-1 at 4. When the lease was set to end, on August 1, 2024, Plaintiff would have made $35,314.01 in payments. *Id.* The Lease Agreement provided that the Vehicle "is subject to the manufacturer's standard new car warranty." *Id.* at 5.

Plaintiff alleges that the Vehicle had "certain defects and non-conformities, including but not limited to an electrical defect causing the Vehicle's doors to malfunction." Dkt. 8 ¶ 20. Specifically, Plaintiff alleges that the Vehicle's doors became "stuck closed and could not be opened." *Id.* ¶ 21. Plaintiff took the Vehicle to Defendant's authorized service and repair facility in Austin, Texas (the "Service Facility") to fix the electrical issue on August 4, 2021, when the Vehicle had 3,222 miles on its odometer. The Service Facility ordered parts for the Vehicle, but told Plaintiff the parts would not be delivered for approximately two to three months. *Id.* Plaintiff returned the Vehicle to the Service Facility for the same electrical issue on September 28, 2021, and the Vehicle was checked in for repairs. *Id.* ¶ 22. Plaintiff alleges that "the vehicle was not returned to Plaintiff and has remained at the Service Facility for nearly 160 days as of the date of this filing," and that he "has received no notice when the repairs will be completed." *Id.* ¶¶ 22-23. Plaintiff filed suit in this Court on April 12, 2022, asserting federal question jurisdiction under 28 U.S.C. §1331 based on his claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (the "MMWA"). Original Complaint, Dkt. 1.

Suits under the MMWA may be brought in either federal or state court. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 474 (5th Cir. 2002). The MMWA grants federal courts jurisdiction to hear claims for breach of express and implied warranty where "the amount in controversy is at

2

least $50,000." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (citing 15 U.S.C. § 2310(d)(3)).

In his Original Complaint, Plaintiff alleged that Defendant failed to repair the Vehicle within a reasonable amount of time, "as required by the warranties issued and by law," in violation of the MMWA. Dkt. 1 ¶ 20. In addition to his claims under the MMWA, Plaintiff alleged breach of express warranty and breach of implied warranty of merchantability claims under Sections 2.313 and 2.314 of the Texas Business and Commerce Code, and a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), TEX. BUS. & COM. CODE §§ 17.46, 17.50.

Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the basis that Plaintiff failed to establish that the amount in controversy exceeded $50,000, as required by the MMWA. Dkt. 5. Defendant argued that the price of the Vehicle leased to Plaintiff was below $50,000, and that Plaintiff had not pled no alleged damages that would exceed the threshold amount. *Id.* Plaintiff then filed his Amended Complaint, asserting the same claims but removing his reliance on federal question jurisdiction under the MMWA. Dkt. 8. In his Amended Complaint, Plaintiff asserts that the Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because "diversity of citizenship exists" and "Plaintiff's claims in this matter exceed $75,000.00 in damages." *Id.* ¶¶ 4, 6. The District Court dismissed Defendant's first motion to dismiss in light of Plaintiff's amended complaint. Dkt. 11.

Defendant again moves to dismiss under Rule 12(b)(1), arguing that the Court should dismiss this case for lack of subject matter jurisdiction because Plaintiff "has not and cannot show that this action involves more than $75,000 in controversy." Dkt. 9 at 4. Alternatively, Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standards

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161. Therefore, the Court addresses Defendant's jurisdictional arguments first.

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the "federal question" jurisdictional statute, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "diversity of citizenship" jurisdictional statute, district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizenship of different states." 28 U.S.C. § 1332(a).

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

In ruling on a Rule 12(b)(1) motion, the court may consider any of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the

complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B. Amount in Controversy**

Defendant argues that Plaintiff has failed to demonstrate that the amount in controversy in this action satisfies the $75,000 jurisdictional minimum under 28 U.S.C. § 1332. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Accordingly, Plaintiff has the burden to establish that the amount in controversy exceeds "the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

To determine whether the $75,000 threshold is satisfied, courts look to the complaint and consider jurisdictional facts as of the time the complaint was filed. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938). "The amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) (citing *Red Cab*, 303 U.S. at 283). But if the plaintiff's allegation of jurisdictional amount is challenged in an appropriate manner by the defendant, the plaintiff must support the allegation by competent proof. *Lister v. Comm'rs Ct., Navarro Cnty.*, 566 F.2d 490, 492-93 (5th Cir. 1978).

> As the Supreme Court has made clear, where it appears to a legal certainty that a plaintiff's claim is truly for an amount below the jurisdictional amount required to confer federal jurisdiction, dismissal may be justified. In making that determination the district court may look, not only to the face of the complaint, but to the proofs offered by the parties.

*U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 283 (5th Cir. 2001) (citing *Red Cab*, 303 U.S. at 283).

Determining the value of the matter in controversy for purposes of federal subject matter jurisdiction is a federal question decided under federal standards. 14AA CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 3702 (4th ed. April 2022 Update). However,

> it is well established that in a diversity of citizenship case the federal courts must look to state law to determine the nature and extent of the right that the plaintiff is seeking to have enforced or protected. This principle . . . includes examining the forum state's rules regarding the applicable measure of damages and the availability of special and punitive damages, as well as a right to attorneys' fees.

*Id.*

### III.   Analysis

Because Defendant has properly challenged the allegation of the jurisdictional amount, Plaintiff has the burden to support his allegations of the jurisdictional amount. *See Lister*, 566 F.2d at 492-93 (finding that defendant made a proper challenge to jurisdictional amount where it argued that amount in controversy was below the jurisdictional amount).

In his Amended Complaint,[3] Plaintiff alleges that his "claims in this matter exceed $75,000.00 in damages." Dkt. 8 ¶ 6. Plaintiff does not support this conclusory allegation by explaining how his claims exceed $75,000. He seeks the following monetary damages:

(1) "The 'full purchase price' of the vehicle [$47,916.75], collateral charges, finance charges, incidental and consequential damages under all Counts above";

(2) "Incidental and consequential damages";

(3) treble and punitive damages under the TDPA; and

(4) "Costs, including expert witness fees and reasonable attorney's fees."

---

[3] "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l. Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007). The Court thus looks to the Amended Complaint, not the Original Complaint, to determine whether Plaintiff has satisfied the jurisdictional minimum.

Dkt. 8 at 11-12. In his Response, Plaintiff contends that the aggregate of these damages exceeds the jurisdictional amount, but does not support his allegations by competent proof.

While the MMWA "is virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty," *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979), it provides that nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law." 15 U.S.C. § 2311(b)(1). Thus, courts look to state law to determine the applicable amount of damages under the MMWA. *Scarlott*, 771 F.3d at 887. Texas law allows recovery for the diminished value of the good caused by the breach of warranty and for recovery of "incidental and consequential damages." *Id.* at 888.

Plaintiff argues that he is entitled to the full purchase price of the Vehicle as economic damages for the alleged breach of warranties. As Defendant points out, however, Plaintiff was leasing the Vehicle; he did not own it. Plaintiff identifies no provision in the MMWA or Texas Business and Commerce Code that would allow for the recovery of damages equal to the full purchase price of a leased vehicle.

In similar cases, district courts have permitted recovery of only the actual lease payments made by the lessee, not "the full capitalized purchase price or current value of the lease by the lessee." *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002) (holding that restitution awardable to automobile lessee for violation of California Song-Beverly Consumer Warranty Act was limited to amounts actually paid under the lease); *see also Roberts v. Thor Motor Coach, Inc.*, No. 6:21-CV-00168-JDK, 2022 WL 107592, at *4 (E.D. Tex. Jan. 11, 2022) (rejecting plaintiffs' argument that they met jurisdictional minimum in MMWA action because they sought rescission of purchase contract and full sales price of the vehicle was $93,059.74); *Lopez v. FCA US LLC*, No. 2:19-CV-07577-RGK, 2019 WL 4450427, at *1 (C.D. Cal. Sept. 16,

2019) (holding that defendant failed to demonstrate MMWA claim exceeded jurisdictional minimum where its calculation was based on contract's total sale price for vehicle); *Pavese v. Gen. Motors Corp.*, No. CIV. A. 97-3688, 1998 WL 57761, at *3 (E.D. Pa. Feb. 11, 1998) ("It does not make sense to allow a lessee to recover the 'full purchase price' when the lessee has made lease payments that do not total the full purchase price."); *Singer v. Land Rover North America, Inc.*, 955 F. Supp. 359, 364 (D.N.J. 1997) (holding that lessee would not be entitled to "a full refund of the vehicle's original purchase price" under New Jersey lemon law). Thus, the Court concludes that Plaintiff would be entitled not to the full purchase price of the Vehicle, but only to the payments he actually made to Defendant.

Pursuant to the Lease Agreement, Plaintiff paid Land Rover Austin $5,764.59 at delivery of the Vehicle, comprising a $5,000 deposit and his first monthly payment, and agreed to make 38 future monthly payments of $764.59 starting June 1, 2021. Because Plaintiff has not alleged the number of payments he actually made or the total amount he has paid to Land Rover Austin under the Lease Agreement, he has failed to demonstrate the amount in controversy with competent proof. *See Scarlott*, 771 F.3d at 889 (explaining that plaintiff did not meet burden to establish jurisdictional threshold where she did not quantify incidental and consequential damages).

Assuming that Plaintiff made monthly payments as set out in the Lease Agreement, when he filed his Amended Complaint on May 24, 2022, Plaintiff would have paid Land Rover Austin a total of $14,939.67, equal to the initial payment of $5,764.59 plus $9,175.08 for twelve monthly payments of $764.59. Further assuming that Plaintiff is entitled to treble damages under the TDTPA,[4] his damages would total $44,819.01, still far below the jurisdictional minimum.

---

[4] Under the TDTPA, a plaintiff may be entitled to recover up to three times the amount of damages if "the conduct was committed intentionally." TEX. BUS. & COMM. CODE ANN. § 17.50(b)(1) (West 2005).

8

Plaintiff argues that even if he is not entitled to the full price of the Vehicle, he still meets the $75,000 threshold based on his request for attorney's fees. Plaintiff submits that: "It would be reasonable to estimate that through the discovery phase of this litigation, Plaintiff's counsel's fees should well exceed the remaining roughly $35,000 needed to meet the $75,000 diversity jurisdictional threshold, without including the potential attorneys [sic] fees up to and through trial." Dkt. 10 at 1. Although Plaintiff would be entitled to "reasonable and necessary attorneys' fees" if he prevails on his breach of warranty claims under Texas law,[5] it is not clear that the District Court would find a fee award of more than $30,000 to be reasonable and necessary in a case involving $14,939.67 in economic damages.

Plaintiff also requests incidental and consequential damages, but neither identifies nor quantifies any such damages. Accordingly, the Court is unable to consider them in assessing the amount in controversy. *Scarlott*, 771 F.3d at 889.

Because Plaintiff has failed to sustain his burden under 28 U.S.C. §1332(a) to show that this case "exceeds the sum or value of $75,000, exclusive of interest and costs," the Court lacks subject matter jurisdiction to adjudicate it. Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction should be granted.

## IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) (Dkt. 9) for lack of subject matter jurisdiction.

---

[5] TEX. BUS. & COMM. CODE ANN. § 17.50(b)(1) ("Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees."); *cf.* MMWA, 15 U.S.C. § 2310(d)(2) (providing that a prevailing plaintiff "may be allowed" to recover attorneys' fees "unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate").

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 7, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE